[No. 2448-1.    Division One.    April 15, 1974.]

THE STATE OF WASHINGTON, *Respondent,* v. BILLY JAMES BELL, *Appellant.*

*Stephen J. Crane,* for appellant (appointed counsel for appeal).

*Christopher T. Bayley, Prosecuting Attorney,* and *Michael P. Ruark, Deputy,* for respondent.

HOROWITZ, J.—Defendant, after jury trial, appeals a judgment of conviction for second-degree murder. The information in substance charged that defendant had beaten one Estelle Cook, and that she died as a result of the beating.

The facts of the case as the jury could have found them are these. Defendant, Billy James Bell, and his wife Cynthia were married on July 7, 1971. At that time the wife had an infant daughter, Estelle Cook, born November 15, 1969. Following marriage, marital difficulties arose and the parties separated about October 1972. Shortly before separation, Estelle's custody was relinquished to the Office of Children's Protective Services, Washington State Department of Social and Health Services (OPS), because of evidence the child had been physically abused. While defendant was separated from his wife, the OPS returned the child to the mother's care with the request that should

defendant return the office was to be notified. In March 1973, defendant returned to his wife, but the latter did not give notice of that fact to the OPS.

On April 25, 1973, the wife left her daughter with defendant at their home between 12:30 and 1 o'clock in the afternoon to go shopping with her mother-in-law, the child's grandmother. The child wished to go with them, but the mother decided not to take her because the child had a bruise on her left foot. The wife returned home at approximately 4:30 p.m. that afternoon and found defendant and her daughter at home. The daughter then had a bruise on her forehead, the lower lip was "busted," and there were scratches on her face. The child was on the bed. On inquiry by the mother as to how she felt, the child said she "felt fine." The wife again left her daughter alone with defendant at approximately 6 p.m. to accompany a friend on an errand. By that time, her daughter had gone to her room to get into her crib.

At approximately 6:30 p.m., in response to a telephone call from defendant and before his wife returned to the house, the Seattle Fire Department aid car arrived at the home to provide medical aid to the child. The efforts of the aid car people were not too successful. The aid car brought the child to a hospital at approximately 6:53 p.m. The child was declared dead at 7:17 p.m.

Meanwhile, defendant had explained to his wife and to the fire department aid who had arrived at the residence that the child had injured herself when falling from the crib; that when, in response to hearing her fall defendant went upstairs to see what had happened, he found the child's limbs tangled up in an overturned tricycle. He continued in this explanation both in a written statement given to the police not long after the child's death, and in his testimony at trial. The nature of the child's injuries, ascertained both from an inspection of her body and as a result of an autopsy, showed that the child had sustained serious injuries. There were a number of bruises about the head and face, testified to in detail by Dr. Wilson, the

acting King County Medical Examiner. The state also introduced opinion testimony by Dr. Kenneth R. Peirce, a neurosurgeon, and Dr. J. Bruce Beckwith, a physician and pathologist. The medical testimony was generally to the effect that the nature and severity of the injuries sustained by the child could not be explained by the fall from the crib as testified to by defendant. That, on the contrary, the injuries could only be explained as the result of a beating. The jury found the defendant guilty of the crime charged and defendant appeals.

Defendant contends the court erred in denying his motion in limine to exclude the testimony of two caseworkers concerning the discovery of injuries sustained by the child on October 4, 1972, when they visited the child at her baby-sitter's home. Defendant further contends the court erred in denying his motion for mistrial by reason of the testimony given by the caseworkers. The evidence is that the two caseworkers responded to a telephone call from the child's baby-sitter while defendant and his wife were away at work. Upon arriving, the caseworkers found evidence which showed that the child had sustained injuries suggesting that the child had been beaten. The caseworkers later interviewed defendant, his wife, and the child's grandmother in an effort to find an explanation for the child's condition. However, the caseworkers never asked the father directly how the injuries occurred. They considered that such a question would alienate him and would be inadvisable. The OPS finally determined the safety and best interests of the child required its custody be taken from the parents and relinquished to the OPS. They explained to the parents that they had the option of "going to a fact-finding hearing in Juvenile Court, . . . as to who had done it . . . ." The parents decided they did not want to do this. The wife then signed temporary custody papers relinquishing custody.

After the child was taken to a hospital for examination and treatment, she was placed in a foster home. Thereafter, the caseworkers continued to remain in contact and observe

the child. They noted that she was ordinarily responsive and outgoing. However, when the defendant's name was mentioned to her, she appeared nervous and fearful of defendant. On several occasions, she stated defendant had hurt her, and on one occasion that defendant did not like her. When asked if she would like to return to him, she said no.

The state contends the evidence summarized was relevant and admissible to prove that defendant's conduct as charged in the information was intentional and not the result of accident. We agree with the state.

■ The general rule is that evidence of prior criminal misconduct ordinarily is irrelevant and therefore inadmissible to prove the crime charged. Nevertheless, evidence of such prior misconduct may be relevant and hence admissible to show motive, intent, absence of accident or mistake, a common scheme or plan, identity. *State v. Goebel,* 40 Wn.2d 18, 21, 240 P.2d 251 (1952), after noting this list of exceptions to the general rule, states:

> This list of exceptions is not necessarily exclusive, the true test being whether the evidence as to other offenses is relevant and necessary to prove an essential ingredient of the crime charged.

*Accord, State v. Hames,* 74 Wn.2d 721, 446 P.2d 344 (1968); *State v. Americk,* 42 Wn.2d 504, 256 P.2d 278 (1953); *State v. Messinger,* 8 Wn. App. 829, 509 P.2d 382 (1973). If the evidence has slight relevancy, it may be excluded

> when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or, . . . where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it. This is a situation where the policy of protecting a defendant from undue prejudice conflicts with the rule of logical relevance, and a proper determination as to which should prevail rests in the sound discretion of the trial court, . . .

*State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950). *Accord, State v. Messinger, supra; State v. Portrey,* 6 Wn. App. 380, 492 P.2d 1050 (1972). We find no abuse of discretion here.

Defendant next contends the court erred in giving instruction No. 12A. That instruction reads:

You are instructed that in considering your verdict you may consider testimony concerning other incidents in determining, and only in determining, lack of accident, identity, intent, a common scheme or plan, and motive, if any.

Defendant's exception to that instruction reads as follows:

I don't think it correctly states the law on the subject as to what a jury may consider evidence of prior acts of misconduct. Under the case law of People vs. Albertson in California, the Court says that before a jury can consider testimony for the specified purposes, they must conclude, first, that the event occurred and, second, that the defendant was the actor and the person guilty of the offense charged.

■■ Instruction No. 12A is a correct statement of the law. *State v. Hames, supra; State v. Goebel, supra; State v. Messinger, supra.* The exception taken indicates defendant felt the need for a further explanatory instruction. If so, it was his duty to request it and then, if the instruction was denied, to state his exceptions to that denial so as to preserve the right of appellate review. CR 51 (f); CAROA 43. It was no part of the duty of the trial court to give an explanatory instruction sua sponte. *See State v. Mayner,* 4 Wn. App. 549, 483 P.2d 151 (1971). It appears defendant requested an instruction purporting to embody his theory of when acts of prior misconduct may be used. The proposed instruction, however, is not in the statement of facts as required by CAROA 34(9), formerly 34(8), and we cannot review it. *State v. Johnson,* 82 Wn.2d 156, 508 P.2d 1028 (1973), *aff'g State v. Johnson,* 7 Wn. App. 527, 500 P.2d 788 (1972); *Porter v. Chicago, M., & St.P. & Pac. R.R.,* 41 Wn.2d 836, 252 P.2d 306 (1953); *State v. Myers,* 6 Wn. App. 557, 494 P.2d 1015 (1972).

■■ Defendant next contends the court erred in overruling his objection to the admission of colored photographs of the deceased child's body during the performance of the autopsy on the ground they were inflammatory and repeti-

tious in nature. The state points out this assignment of error is unaccompanied by argument or authority and is, there-fore, not reviewable. In effect the assignment of error is treated as if not made. *State v. J-R Distribs., Inc.*, 82 Wn.2d 584, 512 P.2d 1049 (1973); *State v. Braun*, 82 Wn.2d 157, 509 P.2d 742 (1973); *State v. Boggs*, 80 Wn.2d 427, 495 P.2d 321 (1972). The fact that the argument and authority are contained in the reply brief—the situation here—no more cures the defect than placing an assignment of error for the first time in a reply brief. *State v. Tanzymore*, 54 Wn.2d 290, 340 P.2d 178 (1959); *Puget Sound Marina, Inc. v. Jorgensen*, 3 Wn. App. 476, 475 P.2d 919 (1970).

There is good reason for requiring an appellant to place his argument and supporting authority in his opening brief. Unless he does so, his opponent is deprived of a fair opportunity to respond in the only brief the rules authorize, namely, the answering brief. The rules do not provide that the respondent should prepare a second brief to respond to the reply brief. There may be the rare case when permission to write a second brief could be obtained. The delays and additional expense renders such a practice generally undesirable. In any event, the colored photographs here admitted in evidence were used in the testimony of the state's witness, Dr. Wilson, to explain his findings. Such use was entirely proper. We find no abuse of discretion by the trial court in admitting the colored photographs. *State v. Vidal*, 82 Wn.2d 74, 508 P.2d 158 (1973); *State v. Tikka*, 8 Wn. App. 736, 509 P.2d 101 (1973).

■ Defendant finally contends the court erred in denying his "motion for judgment of acquittal notwithstanding the verdict or for a new trial." We treat the first motion as a motion for arrest of judgment pursuant to CrR 7.4, superseding CrR 101.04W(c). Such a motion includes the ground of "insufficiency of the proof of a material element of the crime." CrR 7.4(a)(3). A review of the evidence shows that there is substantial evidence and reasonable inferences therefrom to sustain the verdict. *State v. Ran-*

964

*decker,* 79 Wn.2d 512, 487 P.2d 1295 (1971). With respect to defendant's motion for new trial, no error is called to our attention other than those already ruled upon.

Affirmed.

SWANSON, C.J., and JAMES, J., concur.

Petition for rehearing denied June 19, 1974.

Review pending by Supreme Court August 20, 1974.