997 P.2d 923 (1999)
99 Wash.App. 312
STATE of Washington, Respondent,
v.
Gabriel HERNANDEZ, Appellant.
No. 41249-3-I.
Court of Appeals of Washington, Division 1.
October 25, 1999.
Publication Ordered November 29, 1999.
*924 Christopher Gibson, Nielsen, Broman & Assoc., P.L.L.C., Seattle, for Appellant.
Lee D. Yates, Senior Deputy Pros. Atty., William M. Berg, Deputy Pros. Atty., Seattle, for Respondent.
APPELWICK, J.
Gabriel Hernandez appeals his conviction for second degree murder while armed with a firearm. Hernandez contends that the trial court erred when it refused to instruct the jury on the lesser included offenses of first and second degree manslaughter. Hernandez also claims that the trial court erred when it admitted evidence of other crimes, wrongs or acts under Evidence Rule 404(b). We find that the instructions for lesser included offenses were properly refused because Hernandez failed to introduce sufficient facts to support them. Also, the State's evidence of prior physical abuse was admissible to establish intent, and to rebut the defense claim that the shooting was an accident. Accordingly, we affirm.

FACTS
Gabriel Hernandez lived with Robin Valadez and their two children. On December 9, 1996, Hernandez's employer held a Christmas party for its employees. Hernandez went home that evening after work, and then went to the party alone. Hernandez brought a gun to the party and showed it to at least two of his coworkers.
After Hernandez left the party and returned home, at 3:59 a.m., Hernandez called 911 from a pay phone and reported that he found his girlfriend lying on the floor with a gunshot wound to her chest. He told the operator that he had attempted CPR before he made the call.
Seattle Police Officers Elias and Snyder responded at 4:04 a.m. They found Hernandez standing over Valadez's body and immediately ordered him to lie face down on the floor. Officer Snyder saw the bullet hole in Valadez's chest and was unable to detect a pulse. Paramedics arrived and asked how long ago Valadez had been shot. Hernandez replied, "I don't know. I was at a party when she was shot.... People saw me there...."
After Hernandez was advised of his constitutional rights, Officer Snyder questioned him about the incident. Officer Snyder asked Hernandez if he owned a gun or if *925 there was a gun in the house. Hernandez stated that he did not own a gun, but that Valadez did own one, which she kept hidden. He described the gun as a nickel or chrome plated .38 caliber revolver.
Officer Snyder claims that while he drove Hernandez to the West Precinct, Hernandez told him that he returned home from a party and found Valadez lying down in the kitchen. Hernandez said that their telephone did not work, so he had to call 911 from a pay phone.
At the West Precinct, Detectives Boatman and Ramirez advised Hernandez of his constitutional rights and asked him about the incident. Hernandez repeated his story that he returned home from a party and found Valadez shot in the chest. Detective Ramirez told Hernandez that he did not believe him, and that he was going to perform a gun shot residue test to see if Hernandez had recently fired a gun.
After a residue sample was taken from Hernandez's hands, Detective Ramirez allowed Hernandez to call his friend Beatriz Alvarado. Hernandez spoke with Alvarado in Detective Ramirez's presence, and he told her that Valadez had been shot with her own gun.
Detective Ramirez then continued interviewing Hernandez. Detective Ramirez said that the residue test would likely show that Hernandez had recently fired the gun, and that his statement about Valadez being shot with her own gun indicated his involvement in the shooting. Hernandez eventually told Detective Ramirez that the shooting had been an accident.
In a tape-recorded statement, Hernandez said that Valadez began arguing with him when he returned home from the party, and that he sat in front of the television while she stood in the dining area. Then, "[t]he gun went off, I, I'm sure ... she, it hit a can. I immediately got up. I went towards her to grab the gun and she went into the kitchen. I grabbed the gun. She fell down. She hit the floor." He states that he then asked her what was wrong, and saw a bullet hole in her chest.
Hernandez went on to explain that he did not hear the shot, and that he thought that she just fell down. He also stated, "I immediately went to grab the gun from her. I could have grabbed it though, I, I, I was just, I don't know...."
Detective Ramirez then asked Hernandez if he was concerned about being accused of killing Valadez. Hernandez responded, "Yes. Well, I, I really, really didn't, didn't think about being accused. I was, I was worried about what would happen to her because she, I, I didn't think, it, she was going to die. I, I `cause she, she had tried to kill herself before.'"
While Hernandez was being questioned, Detective Gagnon processed the scene of the shooting. He found a .38 caliber pistol on a cabinet. The gun contained five rounds, two of which had been fired. He then found a spent slug on a windowsill in the living room. There was a beer can with a bullet hole through it, a remote control that was broken to pieces, a lotion bottle with a hole through it, and bullet strike marks in a coffee table and in the blinds above the windowsill.
The recovered gun and rounds were processed for fingerprints. The only prints of comparable value on the gun and on the recovered rounds belonged to Hernandez. The gun was further tested, and proved to be the source of the slug that was recovered from Valadez's body. Additional testing showed that the gun was fired approximately 3 to 12 inches from Valadez's chest.
Dr. Norman Thiersch, a King County Medical Examiner, conducted the autopsy. He noted that Valadez's body had more than an average number of scars and that she had other injuries consisting of bruises and abrasions, some of which appeared to have occurred contemporaneously with her death. He further noted that her blood alcohol was.09 at the time of death, and he found no evidence that anyone had attempted CPR.
Hernandez was charged with second degree murder while armed with a firearm under the alternatives of intentional murder or felony murder. Prior to the trial, the court conducted a hearing to determine the admissibility of the State's proffered evidence of Hernandez's prior physical abuse of Valadez. At the conclusion of the pretrial *926 testimony, the trial court found some of the State's evidence admissible to show intent and the absence of mistake or accident.
Specifically, the trial court allowed Andrea Sherrill to testify regarding injuries she observed on Valadez's body, Valadez's demeanor on two occasions when she spent the night with Sherrill, and steps Sherrill took to assist Valadez. Sherrill was allowed to testify that on November 10, 1994, Valadez arrived at Sherrill's home in the early morning hours in a police car with her children. At that time Valadez told Sherrill that she and Hernandez had been fighting and that she was concerned for her physical safety. Furthermore, Sherrill was allowed to testify that she saw Valadez with bags packed in preparation to leave Hernandez, that Valadez used her address to receive mail, and that Valadez hid mail from Hernandez.
The trial court allowed Phyllis Jenkins to testify that she observed injuries on Valadez. Jenkins was also allowed to testify that once she saw Hernandez grab Valadez and leave marks on her arm. And Erica Campbell was allowed to testify that she also observed injuries on Valadez. Also, Campbell was allowed to testify that she called the police at Valadez's request after seeing that Valadez had a second black eye within a two-week period.
Hernandez did not testify. He relied upon the above statements to Detective Ramirez and to Beatriz Alvarado, to substantiate his claim that the shooting was an accident. Alvarado testified that Hernandez told her that while he was sitting in front of the television he saw Valadez with the gun and heard a shot go off, then,
he said she was in the kitchen, she was like far away from him. And then he said he was getting closer, she fell on the floor, and he thought that she passed out because she was scared when she heard the shot. He was yelling, and then he dropped the gun, put it on top of the counter, and he was trying to see if she can respond, and he say that he saw the shot in the chest....
At the conclusion of the evidence, Hernandez requested lesser included instructions of manslaughter in the first and second degree, which the trial court refused. The trial court found that if the jury believed that the shooting was an accident, it may find the homicide excusable, and the jury was so instructed. The jury found Hernandez guilty; however, the verdict form did not require the jury to specify whether that finding was premised on intentional murder or felony murder. This appeal timely followed.

ANALYSIS
The Lesser Included Offense Instructions were Properly Denied
Hernandez first assigns error to the trial court's refusal to give the jury instructions on first and second degree manslaughter, crimes that are lesser included offenses to the State's charge of intentional murder. Hernandez contends that those instructions were warranted, because he claimed that Valadez's death resulted from an accident during a struggle between them.
"A trial court's refusal to give a requested instruction, when based on the facts of the case, is a matter of discretion and will not be disturbed on review except upon a clear showing of abuse of discretion." State v. Lucky, 128 Wash.2d 727, 731, 912 P.2d 483 (1996), overruled on other grounds by State v. Berlin, 133 Wash.2d 541, 947 P.2d 700 (1997).
A defendant is entitled to a lesser included offense instruction if each of the elements of the lesser included offense is a necessary element of the offense as charged (the "legal prong"), and the evidence supports an inference that only the lesser crime was committed (the "factual prong"). State v. Tamalini, 134 Wash.2d 725, 728-29, 953 P.2d 450 (1998); State v. Gostol, 92 Wash. App. 832, 965 P.2d 1121, 1122 (1998), citing State v. Berlin, 133 Wash.2d 541, 545-46, 947 P.2d 700 (1997), affirming the lesser included test established in State v. Workman, 90 Wash.2d 443, 447-48, 584 P.2d 382 (1978).
Here, the State and the appellant agree that the legal prong of the Workman test is satisfied. Accordingly, we examine only whether the trial court abused its discretion in finding that Hernandez failed to satisfy the factual prong. In other words, we examine *927 whether Hernandez presented evidence that supports an inference that only one of the lesser crimes, manslaughter in the first or second degree, was committed.
A person is guilty of manslaughter in the first degree when he or she recklessly causes the death of another person. RCW 9A.32.060. A person is guilty of manslaughter in the second degree when he or she causes the death of another with criminal negligence. RCW 9A.32.070. Therefore, Hernandez would have been entitled to his requested instructions only if there was evidence presented that would support an inference that he caused Valadez's death by actions which were reckless or criminally negligent.
Hernandez contends that he presented facts supporting either first or second degree manslaughter through his taped statement to the police and through his statement to Alvarado. In his taped statement, Hernandez stated that he came home from the party and sat in front of the television. He then states, "[S]he was like in the dining area. The gun went off .... I immediately got up. I went towards her to grab the gun and she went into the kitchen. I grabbed the gun. She fell down. She hit the floor." Hernandez then stated that he did not hear a second shot, and thought that Valadez just fell down. And he stated that he went to grab the gun, and "could" have grabbed it, but that he did not know if he had done so.
In this statement, Hernandez did not specifically describe any physical acts that explain how Valadez was shot. He did not establish that he touched the gun before the bullet that killed Valadez was fired. Hernandez then went on to suggest that Valadez had shot herself in an act of suicide.
Hernandez's account of the events, as stated to Alvarado, are similarly vague. The version of events conveyed in Alvarado's testimony, does not contain a specific description of a physical struggle between Hernandez and Valadez. Nor does it explain how, or by whom, the fatal bullet was shot:
he said she was in the kitchen, she was like far away from him. And then he said he was getting closer, she fell on the floor, and he thought that she passed out because she was scared when she heard the shot. He was yelling, and then he dropped the gun, put it on top of the counter, and he was trying to see if she can respond, and he say that he saw the shot in the chest....
A defendant is entitled to have a jury instruction upon its theory of the case if there is sufficient evidence to support that theory. State v. Theroff, 95 Wash.2d 385, 389, 622 P.2d 1240 (1980). Both manslaughter in the first and second degree require a finding that the accused actually caused the death of another. RCW 9A.32.060; RCW 9A.32.070. Hernandez's statements to Detective Ramirez and Beatriz Alvarado do not contain any admissions that Hernandez acted in a manner that caused Valadez's death. Consequently, neither statement amounts to affirmative evidence that he committed first or second degree manslaughter and not second degree murder.
Furthermore, the trial court correctly determined that if the jury believed Hernandez's account, that the shooting was an accident, he would have established a complete excusable homicide defense. The jury was thereby instructed:
It is a defense to a charge of murder that the homicide was excusable as defined in this instruction.
Homicide is excusable when committed by accident or misfortune in doing any lawful act by lawful means, without criminal negligence, or without any unlawful intent.
The State has the burden of proving the absence of excuse beyond a reasonable doubt. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.
Accordingly, we find no abuse of discretion by the trial court in refusing to give the requested instructions for lesser included offenses.
Evidence of Prior Abuse under ER 404(b) was Properly Admitted
Hernandez also contends that the trial court abused its discretion when it admitted *928 evidence under Evidence Rule 404(b) that he had physically abused Valadez in the past. The State sought to admit this evidence to prove criminal intent and to rebut Hernandez's defense that Valadez's death was an accident. ER 404(b) provides:
Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
As such, the use of other crimes and acts to rebut a claim of accident, or to rebut "any material assertion by a party" is a well-established exception to ER 404(b). 5 KARL B. TEGLAND, WASHINGTON PRAC. EVIDENCE § 114, at 391, § 117, at 411 (3rd Ed.1989). Before admitting evidence under ER 404(b), a trial court must: (1) find by a preponderance of the evidence that the misconduct occurred; (2) identify the purpose for which the proffered evidence is introduced; (3) determine that the evidence is relevant; and (4) find that its probative value outweighs its prejudicial effect. State v. Baker, 89 Wash.App. 726, 732, 950 P.2d 486 (1998), citing State v. Lough, 125 Wash.2d 847, 889 P.2d 487 (1995). Admission of evidence under ER 404(b) is reviewed for abuse of discretion. State v. Powell, 126 Wash.2d 244, 893 P.2d 615 (1995).
Hernandez contends that the trial court abused its discretion in admitting the testimony regarding Valadez's numerous bruises, and her strained relationship with Hernandez, over a period of years and months prior to her death. Hernandez argues that such testimony was not logically relevant to any material issue at trial.
The test for logical relevance is whether the evidence is necessary to prove an essential element of the crime charged. State v. Robtoy, 98 Wash.2d 30, 42, 653 P.2d 284 (1982), quoting State v. Goebel, 40 Wash.2d 18, 21, 240 P.2d 251 (1952). Evidence of prior misconduct is generally admissible to show intent and the absence of accident when a defendant admits doing the act, but claims that he did not have the requisite state of mind to commit the charged offense. State v. Hieb, 39 Wash.App. 273, 693 P.2d 145 (1984), citing State v. Saltarelli, 98 Wash.2d 358, 655 P.2d 697 (1982).
Intent is a necessary element of intentional and felony murder. The State needed to show either that Hernandez caused Valadez's death with the specific intent to cause her death, or that he caused her death while intentionally assaulting her with a deadly weapon. RCW 9A.32.050 (1)(a) and (b). Through his statements, Hernandez vaguely admitted some involvement in Valadez's death, but claimed that it was an accident and that he did not intend to assault her with the gun, or to cause her death. Therefore, the element of intent was at issue, and evidence of an ongoing pattern of abuse became logically relevant, as it tended to make Hernandez's accident account less probable.
Similarly, in State v. Gogolin, 45 Wash. App. 640, 727 P.2d 683 (1986), the defendant was charged with assaulting his ex-wife by striking her on the head with a revolver. The defendant claimed that she had been injured when she fell backward down the stairs during an argument. At trial, the victim was permitted to testify about a prior incident of assault. This court held that the evidence was relevant and probative since it tended to rebut the defense of accident by demonstrating defendant's history of hostility and abusive conduct toward the victim. "Thus, the evidence tended to make more probable the fact that her injuries resulted from an intentional assault rather than an accident." Gogolin, 45 Wash.App. at 646, 727 P.2d 683. See also State v. Bell, 10 Wash.App. 957, 961, 521 P.2d 70, review denied, 84 Wash.2d 1006, 1974 WL 45208 (1974) (evidence of prior beatings inflicted on child victim properly admitted in prosecution for second degree murder of a child where defendant claimed child had injured herself by falling from crib).
It is undisputed that Hernandez's defense was that Robin Valedez's shooting death was accidentali.e., that no crime occurred. Therefore, evidence of prior incidents in which Hernandez physically harmed Valadez would be highly relevant to a crucial *929 aspect of the State's case: the need to rebut Hernandez's claim of accident and to establish an intentional killing. Thus, as the trial court concluded, the evidence was relevant to a material assertion of the defendant. The trial court did not abuse its discretion in admitting the challenged evidence; it was logically relevant and necessary to establish Hernandez's intent, and to rebut his accident defense.
We affirm.
WEBSTER and BECKER, JJ., concur.