IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 38462-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| LINDEN K. THOMAS, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — This appeal introduces us to peer to peer (P2P) online networks.

Linden Thomas appeals his convictions for disseminating, from his home computer, child

pornography to others. He contends insufficient evidence supports his two convictions.

He also argues that his trial counsel performed deficiently when failing to seek

suppression of objects seized from his home and when failing to object to evidence of

other misconduct. We reject his contentions and affirm his convictions. We, however,

remand for the striking of two community custody conditions imposed in his judgment

and sentence.

FACTS

This prosecution of Linden Thomas arises from his alleged sharing over the

Internet of child pornography. We borrow the facts in part from findings of fact entered

by the superior court after a bench trial.

Moscow Police Department Detective Eric Kjorness works with the Idaho Attorney General Internet Crimes Against Children Unit where he focuses on Internet crimes against children. He possesses expertise in digital forensics. On December 8, 2017, Detective Eric Kjorness connected his work computer, which employed specialty investigative software, with an IP address. During the connection, the investigative software flagged that child pornography files were being downloaded.

An IP address acts as a street address for an Internet connection. Every connection to the Internet possesses a unique IP address associated with its location. IP addresses are commonly used to identify computers on the Internet. An external IP address, like the one identified by Detective Eric Kjorness in this case, does not ascertain the specific computer making a connection, but it can identify the residence or business associated with the connection.

The investigative software used by Detective Eric Kjorness monitored an online network called "BitTorrent." Report of Proceedings (RP) at 65. BitTorrent is a P2P network used for sharing files across computers. A P2P network lacks a centralized server. Instead, each computer functions as both a server and a client, supplying and receiving files, with bandwidth and processing distributed among all members of the network. Each user stores and transfers files directly from his or her computer. P2P networks are used for some legitimate purposes. Napster was one of the early P2P networks. But users commonly use the network for dissemination of child pornography.

2

"uTorrent" is one of many types of software that an individual may use to send and receive files on BitTorrent. As an individual downloads a file from the network, uTorrent simultaneously shares the files to others on the network. When one installs uTorrent on a computer, the program asks that the installer agree to share information. The installation process ensures that the user will participate in both searching *and* sharing so that the entire network community may benefit from the decentralized design.

Detective Eric Kjorness' investigative software detected the IP address associated with the connection and reported that uTorrent transferred the illicit files. The investigative software maintained a single connection with the specific IP address and downloaded files exclusively from that address.

Detective Eric Kjorness, through his specialty investigate software, connected four additional times with the same IP address. The direct connections all occurred on a single day, within a four-hour time frame. The five total connections resulted in the receipt of ten files. The files included two videos and eight photographs depicting minors engaged in sexually explicit conduct.

Detective Eric Kjorness requested an administrative subpoena for Cable One to determine the street address for the registration of the IP address from which his computer downloaded child pornography. Cable One responded that the IP address belonged to Linden Thomas with a physical address for the Internet subscription being 1410 6th Street, Clarkston, Washington. After learning that the IP address was located

outside of Idaho, Detective Kjorness contacted Clarkston Police Department Detective

Sergeant Bryon Denny and provided Denny with information collected by the

investigation.

Clarkston Detective Byron Denny garnered a search warrant for 1410 6th Street.

The search warrant listed the suspected crimes as dealing in depictions of minors engaged

in sexual conduct in violation of RCW 9.68A.050, sending and bringing into the state of

Washington such depictions in violation of RCW 9.68A.060, possessing depictions of

minors engaged in explicit sex in violation of RCW 9.68A.070, and viewing such

depictions in breach of RCW 9.68A.075. The search warrant authorized the search and

seizure of the following evidence:

> 1. Any digital or physical image or movie containing or displaying
> depictions of a minor engaged in sexually explicit conduct.
> . . . .
> 2. All computers as defined as:
> . . . .
> 3. All computer network and system equipment as defined as:
> . . . .
> 4. Any and all evidence of, computer programs and software as
> defined as:
> . . . .
> 5. Any and all digital storage media as defined as:
> . . . .
> 6. Any and all cell or mobile phones.
> 7. Any digital cameras and/or traditional cameras that may contain
> undeveloped film.

8. Any developed film, slides, or printed photographs, which include evidence of depictions of minors in sexually explicit conduct as well as images of possible child victims.

9. Any and all portable digital devices as defined as:

. . . .

10. Any documentation pertaining to user attribution, vendor names and phone numbers, and all system and user sign-on password or access codes. To include any data security devices as defined as:

. . . .

11. Peripheral computer equipment including printers, modems, or scanners.

12. Contents of volatile memory related to computers and other digital communication devices that would tend to show the current and recent use of the computer, use of encryption, use of other communications devices, routes of Internet and other digital communications traffic and passwords, encryption keys or other dynamic details necessary to preserve the true state of running evidence.

13. Any written or electronic documentation showing the use of, possession of, or affiliation with any online peer-to-peer or other file sharing network.

14. Any writing or physical evidence that tends to show who occupies the premises. Indicia of residency in, or ownership or possession of, the premises and any of the above items.

Clerk's Papers (CP) at 250-52. For each item listed in the warrant, the warrant added

either statutory definitions found in RCW 9.68A.011 or detailed definitions regarding the

evidence sought.

Law enforcement executed the search warrant at 1410 6th Street in Clarkston on

January 4, 2018. At the time, Linden Thomas lived at the address with his wife, Diana,

and her son, Kevin Tamme. Tamme had resided at the abode since December 2017, one

month earlier.  Thomas was not home when the officers arrived.  After officers knocked and announced themselves, Tamme opened the door and let them inside.

Law enforcement officers searched numerous computers, phones, USB drives, digital storage cards, and loose hard drives in the residence.  Officers seized multiple hard drives and an Apple computer for further forensic analysis.

Detective Brian Birdsell of the Lewiston Police Department and Detective Lawrence Mowery of the Moscow Police Department conducted forensic analysis of a hard drive found on a desk in the residence's basement.  Their analysis revealed that the files downloaded to Detective Eric Kjorness' computer on December 8, 2017 came from this loose hard drive.  The officers found the two downloaded files in the unallocated space on the hard drive.  An "unallocated space" is an area employed by an operating system as space available for new files to be written and an area where deleted files are logged.  Once a file is in an unallocated space, the file loses most of its identifying metadata and is no longer available to be viewed or shared.  Specialized forensic software allows for examinations into an unallocated space.

Detectives Brian Birdsell and Lawrence Mowery found the files downloaded by Detective Kjorness on the seized hard drive in the form of complete images, link files, partial videos, and thumbnail images.  A link file is a shortcut that points to where a specific file may be located on a computer.  The actual files "pointed to" by the link files had been deleted.  The analysis also revealed "carved images."  RP at 117.  Carved

images are like books on a library book shelf that no longer have a "card catalog" or "index" identifying which user grabbed the image or the date of access. The forensic analysis detected the playing of one of the videos.

The files recovered from the seized hard drive comprised two videos constituting sexually explicit conduct as defined by RCW 9.68A.011(4)(a)(b) and eight images constituting sexually explicit conduct as defined by RCW 9.68A.011(4)(f). The person who downloaded and shared the images and videos would have known that the persons depicted where minors engaged in sexually explicit conduct.

According to Detective Eric Kjorness, the seized hard drive permitted access to the BitTorrent network with the uTorrent software. The hard drive maintained three user accounts under the names "guest," "Lin," and "administrator," although the analysis concluded that only the "Lin" account was active. The hard drive also contained references to five different e-mail accounts. On the hard drive, detectives found images of Linden Thomas' driver's license and passport and his wife's passport.

The detectives' forensic analysis revealed use of the "CC cleaner" program on the hard drive. CC cleaner operates as an "anti-forensic software" because it cleans file remnants, securely erases pictures and videos, and removes some registry entries. The CC cleaner was used on the hard drive within three hours of Detective Eric Kjorness downloading files from the drive. Because the user had not activated the CC cleaner to entirely wipe the hard drive, the analysis found some files and file artifacts in the

7

unallocated space. The file transfer to Detective Kjorness' investigative computer occurred from the allocated space on the hard drive. The CC Cleaner later moved those files to the unallocated space.

During the execution of the search warrant, Linden Thomas arrived at the residence. He agreed to an interview after advisement of his rights. Thomas told officers that he worked as an IT manager for Rodeo Internet, a local Internet provider. Thomas denied downloading or sharing any child pornography. Thomas admitted that he had used BitTorrent and uTorrent. He told the officers that he had removed the seized hard drive from his computer because of problems with the drive. During trial testimony, Thomas denied erasing any file from the hard drive after its removal.

In his police interview, Linden Thomas, when asked by Detective Eric Kjorness where the detective should look for child pornography, pointed to the loose hard drive on the desk. Thomas uttered a similar comment to Detective Byron Denny when he pointed the officer, "[w]ithout hesitation," to the hard drive seized. RP at 148. During the interview, Thomas later inconsistently denied that officers would find any child pornography on the driver.

During the law enforcement interview, officers told Linden Thomas that they found a link to child pornography on the hard drive and they disclosed the title of the link. Thomas thereafter asked Detective Bryon Denny four times whether the officers found the "actual video" on the hard drive. Detective Denny, during trial, characterized

the question as strange because Thomas could not deny the presence of the link, but he still wondered whether the file was on the hard drive.

Law enforcement officers discovered that Linden Thomas' computer was the computer used to download and share the illicit files. The computer sat in the basement and had a user name of "Lin." The computer lacked a password. Everyone operating the computer would have done so under the default user name "Lin." Each officer acknowledged, during trial testimony, that he could not rule out that someone else may have used this basement computer. During trial when asked why he believed that Linden Thomas shared the illicit files, Detective Eric Kjorness testified:

> The computer was named Lin, the user named Lin. . . . I know that on that computer one of the recent documents was a like a cover letter for job application with Mr. Thomas' name and address at the top of it, talking about his experience with networking and [I]nternet type work. So, that— that's what led me to believe he was the person using the computer. . . . It was his full name, Linden Thomas.

RP at 97-98.

Neither Kevin Tamme nor Diana Thomas admitted to using BitTorrent or uTorrent. RP 91, 96-97. Law enforcement officers, during the search of the house's upstairs, located an Apple computer with access to the BitTorrent network. The officers knew from the downloaded files that the child pornography did not come from that computer.

9

Detective Byron Denny examined the phone of Kevin Tamme and discovered tranches of pornography opened in active Internet browsers. None of this pornography depicted minors. Tamme denied possessing, distributing, or downloading child pornography.

PROCEDURE

The State of Washington charged Linden Thomas with two counts of first degree dealing in depictions of minors engaged in sexually explicit conduct and eight counts of second degree dealing in depictions of minors engaged in sexually explicit conduct. The charges arose from ten digital files shared on the P2P network to Detective Eric Kjorness' work computer.

Thomas waived his right to a jury trial. During opening statement, defense counsel highlighted that anyone in the residence and any guest could have accessed the basement computer, on which law enforcement found the child pornography.

During cross-examination of the law enforcement officers, the defense questioned whether the download and sharing could have been a mistake, whether officers found indicia of ownership over the hard drive, and whether a person other than Linden Thomas may have accessed the computer. Some of the questions posed to Detective Byron Denny follow:

> And when you say user attribution is at issue, what you are saying is determining who is responsible is at issue?

RP at 159.

> And so, it's true then that anybody at that house, whether Mr. Thomas, Mrs. Thomas, Kevin, overnight guest, friends, family, whomever, anybody who sits down at that computer would just move the mouse or push a button and it's—it's open and ready to go?

RP at 164.

> My question though is it's true that you cannot say with 100 [percent] certainty or really any certainty whether or who was at the keyboard when any of this was happening?

RP at 168.

In response, the State introduced evidence that Linden Thomas had engaged in

other child pornography activity. During the redirect examination of Detective Bryon

Denny, the prosecuting attorney inquired:

> Q Mr. Thomas admitted to activities involving pornography, didn't he?
> A Yes, he did.
> Q He told you that he had looked at pornography recently?
> A Yes.
> MR. MONSON: Objection, leading.
> Q Did he tell you that he had looked at pornography recently?
> A Yes, he did.
> Q Did he tell you about downloading flash games?
> A Yes, he did.
> Q Anime undress games?
> A Yes.
> Q And for the record, an anime undress game, is that something associated with child pornography?
> A Yes, it is.
> MR. MONSON: Your Honor, I'm gonna object based on foundation.
> Q What—what is an anime undress game to your knowledge?

11

A  I will say that every child pornography case I've been involved with has had anime and it's literally doing the act as a cartoon.

Q  So, his admission of downloading or participating in anime undress games was a red flag?

A  Yes.

Q  And Mr. Thomas told you that he had been involved in those activities?

A  Yes.

RP at 173-74.

During the cross-examination of Detective Brian Birdsell, the officer who analyzed the hard drive, defense counsel asked and Birdsell conceded that Linden Thomas' wife, stepson, or a guest could have been at the basement computer when the file sharing occurred.  During redirect, the prosecuting attorney asked about other computer files found:

Q  All right.  Did you find evidence on Mr. Thomas' computer that the user name Lin had accessed child pornography prior to the December 8th date of the sharing?

A  Yes, what I would consider, yes.

Q  You found link files that predated the December 8?

A  Yes, link files and uTorrent fragments.

Q  Did you find recent searches on the computer when you analyzed it?

A  I found a search from 2016.

Q  2016?

A  Yes.

Q  A year prior to this incident?

A  Yes.

Q  What was the—what was significant about that search?

A  The search term was for young boy.

Q  Is that something that you encounter in your investigations of child pornography, that kind of a search?

A  Yes.

12

Q  Did you find link files access anime or anime type links on the computer?
A  Yes.
Q  And did those pre-date the December?
A  Not—let me back up.  I want to correct that.  Not link files, it's web history.
Q  Web history.
A  So, [I]nternet history, yes.
Q  Okay.  Internet history prior to 2017 where the user Lin had accessed anime?
A  Yes, in 2015.
Q  In 2015?
A  Yes.
Q  Were there other links of note prior to the December 17, 2017 date other than the anime or—
A  17th or 7th?
Q  December of 2017.
A  Oh, I thought you said December 17th.
Q  I probably did.
A  Okay.  Sorry.  There was link files before that, true that is correct.
Q  What was the nature that drew your attention to those links?
A  The names of the files.
Q  Indicative of what?
A  Of child pornography.
Q  That was—that was in 2015, 2016 you found those links in that history?
A  It was early in—it was earlier in 2017 like April/May and then there was a couple in July.

RP at 195-97.  These dates were significant as they predated when Kevin Tamme lived at

the house and when an overnight guest stayed in the home.

The trial court found Linden Thomas guilty of the two counts of first degree

dealing in depictions of minors engaged in sexually explicit conduct and eight counts of

second degree dealing in depictions of minors engaged in sexually explicit conduct.  The

13

court later vacated seven of the convictions of second degree dealing in depictions of

minors, based on the State's concession of lack of evidence.

The superior court entered findings of fact and conclusions of law. Finding of fact

3 reads:

> The Court finds that on December 8, 2017 the pictures and videos that were admitted as exhibits P-3 through 12 were disseminated from a computer located in Clarkston, Asotin County, Washington.

CP at 157. Finding of fact 9 declares:

> The Court finds that dissemination was done knowingly in this case. The user had to download "UTorrent," access "BitTorrent," search for the subject files, and then download and share those files.

CP at 157.

The superior court sentenced Linden Thomas on the low-end of his standard range

to 57 months of total confinement with 36 months of community confinement. The

following conditions of community custody were imposed:

> (5) Pay supervision fees as determined by the Department of Corrections;
>
> . . . .
>
> 10. No access or use of the [I]nternet or any device which has the ability to access the [I]nternet without specific written permission from his Supervising Officer.

CP at 227.

14

At sentencing, defense counsel requested that the court waive any costs and fees based on financial hardship. The court, when imposing the sentence, waived the $100 DNA collection fee due to financial hardship, but not the $500 victim assessment.

When appealing, Linden Thomas requested an order of indigency. The superior court found Thomas indigent because he had spent all of his funds on defending the prosecution and had been incarcerated since May 13, 2021. Thomas no longer has an income.

Linden Thomas moved the court to stay the appeal pending a decision from the Washington Supreme Court in *State v. Chambers*, No. 101423-6. We deny the motion.

LAW AND ANALYSIS

On appeal, Linden Thomas argues his trial counsel performed ineffectively, insufficient evidence supported his convictions, and the sentencing court imposed unlawful community custody conditions.

Ineffective Assistance of Counsel

Search Warrant

Linden Thomas contends his trial counsel twice denied him his constitutional right to the effective assistance of counsel. First, he argues his trial counsel performed deficiently when counsel failed to suppress evidence seized pursuant to the search warrant and statements Thomas made during the execution of the search warrant. He argues that the search warrant violated the particularity requirement of the Fourth

Amendment to the United States Constitution, because of its overbreadth. Because the items listed in the warrant included items protected by the First Amendment, a greater degree of particularity was required. The search warrant allowed search and seizure of objects without regard to a connection to the alleged crimes. Thomas insists the trial court would have granted a motion to suppress objects seized, and the court also would have likely suppressed inculpatory statements of Thomas uttered during the execution of the unlawful search warrant. According to Thomas, he suffered prejudice by reason of counsel's failure because the evidence seized was crucial for the State's case.

The Washington and United States constitutions guarantee a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Sardinia*, 42 Wn. App. 533, 538, 713 P.2d 122 (1986). An accused may raise a claim of ineffective assistance for the first time on appeal because of constitutional issues it raises. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

To prevail on an ineffective assistance of counsel claim, the defendant must show that (1) defense counsel's representation was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The reviewing court must presume counsel is effective, and the defendant must show no legitimate strategic or tactical reason for counsel's

16

conduct. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). Prejudice requires the defendant to demonstrate a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different. *Kyllo*, 166 Wn.2d at 862. If one prong, performance or prejudice, is not established, the court need not consider the other. *State v. Kyllo*, 166 Wn.2d 856, 862 (2009).

This appeal illustrates the overlapping nature of the two elements of an ineffective assistance of counsel claim. Because the trial court likely would not have granted a motion to suppress, defense counsel did not perform ineffectively, and Linden Thomas experienced no prejudice.

Linden Thomas faults his trial counsel for failing to move to suppress objects seized in executing the search warrant on the theory that the warrant lacked particularity particularly in light of objects enjoying protection under the First Amendment. The Fourth Amendment to the United States Constitution demands that a search warrant "particularly describ[e] the place to be searched, and the persons or things to be seized." The particularity requirement seeks to prevent general searches, seizure of objects on the mistaken assumption that they fall within the issuing magistrate's authorization, and the issuance of warrants on loose, vague, or doubtful bases of fact. *State v. Perrone*, 119 Wn.2d 538, 545, 834 P.2d 611 (1992). The requirement also eliminates the danger of unlimited discretion in the executing officer's determination of what to seize. *State v. Perrone*, 119 Wn.2d 538, 546 (1992).

17

For most search warrants, law enforcement satisfies the particularity requirement when the warrant is as specific as the circumstances and the nature of the activity under investigation permits. *State v. Perrone*, 119 Wn.2d 538, 547 (1992). If the warrant involves materials potentially protected by the First Amendment, a greater degree of particularity is required. *State v. Vance*, 9 Wn. App. 2d 357, 363, 444 P.3d 1214 (2019). Thus, the search of computers or other electronic storage devices generally creates a heightened particularity concern. *State v. Keodara*, 191 Wn. App. 305, 314, 364 P.3d 777 (2015). Nevertheless, even a generic or general description of the things to be seized may suffice provided that law enforcement shows probable cause of a crime and a more specific description is impossible with the information known to law enforcement at the time the search warrant is obtained. *State v. Perrone*, 119 Wn.2d 538, 547 (1992). The particularity of a search warrant should be tested in a common sense, practical manner, rather than a hyper technical sense. *State v. Perrone*, 119 Wn.2d 538, 549 (1992); *State v. Olson*, 32 Wn. App. 555, 557, 648 P.2d 476 (1982).

Linden Thomas relies on two recent cases addressing warrants authorizing searches and seizures of evidence related to sexually explicit depictions of minors. He analogizes the search of his residence to the searches in *State v. Besola*, 184 Wn.2d 605, 359 P.3d 799 (2015) and *State v. McKee*, 3 Wn. App. 2d 11, 413 P.3d 1049 (2018), *rev'd*, 193 Wn.2d 271, 438 P.3d 528 (2019).

18

The search warrant in *State v. Besola* declared that the crime under investigation was "Possession of Child Pornography R.C.W. 9.68A.070" and broadly authorized the search of:

>      1. Any and all video tapes, CDs, DVDs, or any other visual and or audio recordings;
>      2. Any and all printed pornographic materials;
>      3. Any photographs, but particularly of minors;
>      4. Any and all computer hard drives or laptop computers and any memory storage devices;
>      5. Any and all documents demonstrating purchase, sale or transfer of pornographic material.

*State v. Besola*, 184 Wn.2d at 608-09 (2015). Based on the search warrant, law enforcement seized computers, memory storage devices, CDs, and DVDs. Our Supreme Court held that the search warrant did not meet the particularity requirement because it cited the statute only once and failed to use language from RCW 9.68A.011 to describe or limit the materials sought. Without a direct tie to RCW 9.68A.070, the provisions of the search warrant were overbroad. The search warrant impermissibly allowed seizure of items that would include lawful materials, such as adult pornography and photographs that did not depict children engaged in sexually explicit conduct.

In *State v. McKee*, the search warrant listed the suspected crimes as "'Sexual Exploitation of a Minor RCW 9.68A.040' and 'Dealing in depictions of minor engaged in sexually explicit conduct RCW 9.68A.050.'" *State v. McKee*, 3 Wn. App. 2d 11, 18-19 (2018). The warrant authorized the seizure of a cellphone to collect a variety of

information and data "showing evidence of the above listed crimes." *State v. McKee*, 3

Wn. App. 2d 11, 18 (2018). The appellate court, relying on *State v. Besola*, observed that

the search warrant cited and identified the crimes under investigation but did not use the

language in the statutes to limit the data sought from the cell phone. The warrant gave an

overbroad description of the items sought and allowed law enforcement to search and

seize lawful data when the warrant could have been made more particular. After

perusing the affidavit supporting the warrant, the court reasoned that more details could

have been provided to meet the particularity requirement.

 *State v. Besola* and *State v. McKee* teach, in part, what detail of information does

not suffice for a search warrant satisfying the particularity requirement. We look to some

other decisions to adjudge what information in the warrant meets constitutional muster.

 In *State v. Vance*, 9 Wn. App. 2d 357 (2019), the search warrant authorized the

search of evidence of the crimes of "'RCW 9.68A.050 Dealing in depictions of a minor

engaged in sexually explicit conduct and RCW 9.68A.070 Possession of depictions of a

minor engaged in sexually explicit conduct.'" *State v. Vance*, 9 Wn. App. 2d at 361.

The warrant qualified the items to be seized by using the statutes as a guide. The search

warrant listed the types of electronic devices and media capable of being used to commit

the crimes and described all accompanying objects that may be related to the commission

of the crime. This court upheld the search warrant because it continually utilized the

language of the statute to circumscribe the items sought. Unlike in *State v. Besola* and

20

*State v. McKee*, the warrant regularly referenced the statutory language limiting the evidence that officers could seize. Thus, the warrant was sufficiently particular to cover only data and items connected to the crime. The consistent references limited the discretion of the executing officers. The only potential improvement for the warrant was an inclusion of the definition of "sexually explicit conduct" in RCW 9.68A.011(4).

A common sense reading of the search warrant for Linden Thomas' residence shows sufficient particularity. The warrant identifies the crimes by name and statute. The warrant described the particular evidence sought. It particularizes its search for "[a]ny digital or physical image or movie *containing or displaying depictions of a minor engaged in sexually explicit conduct*." CP at 250 (emphasis added). The warrant includes statutory definitions from RCW 9.68A.011 to modify and describe the terms. The warrant does not simply list in its heading the alleged crimes. When using statutory terms, the warrant specifies a variety of electronic devices and media capable of containing evidence of the alleged crime. Any breadth of the list resulted from the circumstances and the nature of the activity under investigation. Linden Thomas does not suggest how the warrant could have read with more specificity. The warrant only authorized the search and seizure of items related to the commission of the suspected crimes.

Propensity Evidence

Linden Thomas next blames his trial counsel for failing to object to the admission of prejudicial propensity evidence. The State twice presented propensity evidence: (1) testimony that Thomas earlier downloaded an anime undress game, and (2) testimony about the presence on the seized hard drive of link files with names that indicated use of child pornography in April, May, and June 2017. Thomas insists the trial court would have sustained an objection to admissibility. According to Thomas, the evidence did not fall under an exception found in ER 404(b), such as absence of mistake, accident, or identity. The dates supporting the earlier link files were significant to this case because they undercut any argument that Kevin Tamme may have shared the child pornography at issue.

ER 404(b) provides that evidence of prior misconduct, or "bad acts," is not admissible to "prove the character of a person in order to show action in conformity therewith." This type of character evidence is also known as criminal propensity evidence. *State v. Slocum*, 183 Wn. App. 438, 442, 333 P.3d 541 (2014). The same evidence, however, may be admissible for other purposes, depending on its relevance and the balancing of the probative value and danger of unfair prejudice. *State v. Slocum*, 183 Wn. App. 438, 448 (2014). For example, the evidence may be admissible as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." ER 404(b). Evidence of prior misconduct is admissible when the

party seeking to admit the evidence (1) proves by a preponderance of the evidence that the misconduct occurred, (2) identifies the purpose for the evidence's admission, (3) establishes the evidence's relevancy to prove an element of the crime charged, and the trial court (4) weighs the evidence's probative value against its prejudicial effect. *State v. Sexsmith*, 138 Wn. App. 497, 504, 157 P.3d 901 (2007).

During the cross-examination of Detectives Byron Denny and Brian Birdsell, defense counsel elicited from the detective's evidence that the computer on which the crime occurred lacked passwords limiting access to the device. Through examination of witnesses, counsel emphasized that any of the home's residents could have committed the crime. On redirect, the State rebutted the idea that anyone could have shared the child pornography from the computer by introducing testimony from detectives that Linden Thomas admitted to downloading an anime undress game, a form of child pornography, and testimony that the basement computer possessed links to child pornography predating the stepson's residing in the home.

The State's proffered testimony of other misconduct bore relevance to the defense of Linden Thomas that the State could not prove who downloaded and shared the pornography. The use of other crimes and acts to rebut a claim of accident or to rebut any material assertion by a party is a well-established exception to ER 404(b). *State v. Hernandez*, 99 Wn. App. 312, 321, 997 P.2d 923 (1999). We disagree with Thomas that holding the State to its burden of proof that he was the person who downloaded and

23

shared the depictions at issue is different than asserting a mistake, accident, or wrong identity.

Counsel's failure to object to evidence cannot prejudice the defendant unless the trial court would have ruled the evidence inadmissible. *State v. McLean*, 178 Wn. App. 236, 248, 313 P.3d 1181 (2013). Because the trial court would have likely permitted the evidence, we find no prejudice, let alone that defense counsel performed ineffectively. Defense counsel forwarded the best argument that could be summoned in light of the evidence pointing to Linden Thomas as the disseminator of child pornography.

## Sufficiency of Evidence

Linden Thomas challenges the sufficiency of the evidence supporting his convictions by assigning error to many of the findings of fact entered by the trial court. These include, in part or whole, findings of fact 3 and 9, on which findings we focus.

Based on his challenge to the findings of fact, Linden Thomas argues the State failed to prove beyond a reasonable doubt that he "knowingly disseminated" on uTorrent files with depictions of minors. He underscores that the State never presented evidence of the terms, to which he agreed when using the software. Thomas emphasizes that the State presented no evidence of affirmative acts to send the files through the torrent to another. According to Thomas, knowing that files might be shared does not point to him being the disseminator.

The test for determining the sufficiency of the evidence is whether any rational

trier of fact could have found guilt beyond a reasonable doubt. *State v. Salinas*, 119

Wn.2d 192, 201, 829 P.2d 1068 (1992). In challenging the sufficiency of the evidence,

the defendant necessarily admits the truth of the State's evidence and all reasonable

inferences that can be drawn from it. *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182

(2014). The substantial evidence standard is highly deferential as the reviewing court

must view all the evidence in the light most favorable to the State and all inferences must

be drawn in favor of the State and interpreted most strongly against the defendant. *State*

*v. Salinas*, 119 Wn.2d 192, 201 (1992). The court must also defer to trial court on the

persuasiveness of the evidence, witness credibility, and conflicting testimony. *State v.*

*Homan*, 181 Wn.2d 102, 106 (2014).

Under substantial evidence review, the court deems circumstantial evidence as

reliable as direct evidence. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980).

Specific criminal intent may be inferred from the accused's conduct based on logical

probability. *State v. Delmarter*, 94 Wn.2d 634, 638 (1980).

Following a bench trial, appellate review is limited to determining whether

substantial evidence supports the challenged findings of fact and whether the findings

support the trial court's conclusions of law. *State v. Smith*, 185 Wn. App. 945, 956, 344

P.3d 1244 (2015). Substantial evidence exists when evidence sufficient to persuade a

fair-minded, rational person that the findings are true. *State v. Smith*, 185 Wn. App. 945,

956 (2015). Unchallenged findings of fact are verities on appeal. *State v. Lohr*, 164 Wn.

App. 414, 418, 263 P.3d 1287 (2011).

RCW 9.68A.050 delimits the crime of dealing in depictions of minors engaged in

sexually explicit conduct. The statute reads, in pertinent part:

> (1)(a) A person . . . commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the first degree when he or she:
> (i) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells a visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e); or
> (ii) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (a) through (e).
> . . . .
> (2)(a) A person . . . commits the crime of dealing in depictions of a minor engaged in sexually explicit conduct in the second degree when he or she:
> (i) Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, finances, attempts to finance, or sells any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g); or
> (ii) Possesses with intent to develop, duplicate, publish, print, disseminate, exchange, or sell any visual or printed matter that depicts a minor engaged in an act of sexually explicit conduct as defined in RCW 9.68A.011(4) (f) or (g).

A person acts "knowingly" when:

> (i) He or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
> (ii) He or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

Linden Thomas does not challenge findings that the files downloaded to Detective Kjorness' computer on December 8, 2017, came from the hard drive from the basement desk. Thomas admitted to removing the hard drive from his computer and admitted to using BitTorrent and uTorrent. Although the State did not introduce the agreement to which Thomas consented when downloading uTorrent, the State provided testimony that, when one installs uTorrent on a computer, the program asks that the installer agree to share information.

Based on this and other evidence, we conclude that the trial court could, when drawing reasonable inferences, conclude that Linden Thomas knowingly disseminated child pornography. The evidence showed Thomas as the only person who accessed the BitTorrent network. Thomas engaged in work that required knowledge of computer software. Any knowledgeable user of BitTorrent knew that others could access the pornography from Thomas' computer. uTorrent works by downloading files at the same time the files are being shared out.

While relying on *State v. Peppin*, 186 Wn. App. 901, 347 P.3d 906 (2015), and *State v. Vance*, 9 Wn. App. 2d 357, 362 (2019), Linden Thomas argues that RCW 9.68A.050 required him to perform an affirmative act to disseminate the depictions. Neither *State v. Vance* nor *State v. Peppin* provide any proposition that an

"affirmative act" is required to convict. In *Peppin*, this court reviewed a conviction of first-degree possession of depictions of a minor engaged in sexually explicit conduct and conducted no review of the sufficiency of the evidence. The appeal concerned a claimed violation of privacy rights and, in the unpublished portion, sentencing issues. In a subsequent personal restraint petition, *In re Personal Restraint of Peppin*, No. 34866-1-III, slip op. at 3 (Wash. Ct. App. July 31, 2018) (unpublished) https://www.courts.wa.gov/opinions/pdf/348661_order.pdf, the decision noted that the accused had presented expert testimony at trial about a program called "Round Up." The testimony established that the default settings of this program were confusing and allowed sharing for public browsing. This expert testimony persuaded the superior court, after a bench trial to acquit the accused.

*State v. Vance* also did not consider the sufficiency of the evidence or review the statutory requirements of knowing dissemination. In short, Linden Thomas presents no authority claiming that the State was required to prove an affirmative act, other than downloading the P2P program and child pornography, in order to show knowing dissemination.

Linden Thomas attacks other factual findings. We agree findings of fact 8 and 14, regarding his purported admission to using the CC cleaner program, lacked substantial evidence in the trial testimony. No witness testified to such admission at trial. The findings, however, were not important to the finding of guilt.

Community Custody Conditions

Linden Thomas challenges two conditions of his community custody.  The State concedes error in both conditions.

Linden Thomas challenges a condition that he pay the supervision fees determined by the Department of Corrections.  This fee is a discretionary legal financial obligation.  Former RCW 9.94A.703(2)(d) (2021).  This court may allow reversal of the condition when the trial court did not intend to impose discretionary fees.  *State v. Dillon*, 12 Wn. App. 2d 133, 152, 456 P.3d 1199, *review denied*, 195 Wn.2d 1022, 464 P.3d 198 (2020); *State v. Lundstrom*, 6 Wn. App. 2d 388, 396 n.3, 429 P.3d 1116 (2018).  The trial court found Thomas indigent, and the court only imposed mandatory legal financial obligations.  Thus, this condition should be stricken.

The superior court also imposed a condition that prohibits Linden Thomas from accessing or using the Internet without the specific written permission of his supervising officer.  This condition is overly broad as it prohibits constitutionally protected activity and is not narrowly tailored to his offense.  The condition is unreasonable when it substantially limits his use of the Internet for employment purposes.  Similar overbroad conditions have been struck by other courts.  *In re Personal Restraint of Sickels*, 14 Wn. App. 2d 51, 73, 469 P.3d 322 (2020).

CONCLUSION

We affirm the convictions of Linden Thomas for dealing in depictions of minors

engaged in sexually explicit conduct. We remand to the superior court to strike the

community custody conditions that demand payment of community custody supervision

fees and that restrict Internet use.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, A.C.J.

_____
Pennell, J.